(No. 2689—

CHICAGO PARK DISTRICT, A BODY POLITIC AND CORPORATE, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed June 15, 1939.*
*Rehearing denied November 1, 1939.*

JAMES M. SLATTERY, for claimant.

JOHN E. CASSIDY, Attorney General; GLENN A. TREVOR, Assistant Attorney General, for respondent.

*Per Curiam:*

The complaint in this case was filed June 19, 1935, and charges that claimant is a body politic and corporate and that pursuant to the provisions of ''An Act in relation to the creation maintenance, operation and improvement of the Chicago Park District'' (approved July 10, 1933, in force May 1, 1934) it became vested in and to the choses in action of the South

Park Commissioners, a body politic and corporate; and the South Park Commissioners on the thirty-first day of December, 1930, granted a permit to the State of Illinois, Division of Architecture and Engineering, which permit was attached to and made apart of the complaint as Exhibit ''A''; that pursuant to the terms of this permit, the State of Illinois had the right to construct six driveway entrances from Cottage Grove Avenue to the building of the 124th Field Artillery Armory in the northeasterly corner of Washington Park as shown on drawings: Plat plan sidewalk layout, Sheet 31 and Revised Memorial Square and Terrace Layout, dated November 14, 1930, submitted to the commissioners. The most northerly of these driveways was to be extended to the west across the north front of the building and connected with the existing park driveway, said driveway to be proper drainage inlets connected to the existing sewers in the manner approved by the commissioners. It was also provided that trees, electric light posts and other fixtures or appurtenances belonging to the commissioners shall be removed at the expense of the grantee wherever said fixtures or appurtenances fall within the lines of said driveways. The actual work, however, of the removal of electric light posts, etc. and such trees as can be replanted to be done by the park forces and the cost thereof charged to the grantee. The electric duct transmitting current and supplying the lights of the commissioners exists in the space between the curb and the sidewalk, and said conduit and the cables contained therein were to be carefully protected by the grantee in the manner provided in the permit.

It is stipulated that the State proceeded and did receive the grant and that it was necessary to make certain changes in the lighting system, remove and relocate cables and conduits and do other work as provided for in said permit, and that the South Park Commissioners did make certain changes in the lighting system to remove and relocate cables and conduits, and to do other work.

The following is an itemized statement of the work done by the South Park Commissioners in connection with the aforesaid permit agreement hereinabove referred to:

124th Field Artillery Bldg., Washington Park, Chicago.
To construct six driveway entrances.

Expense incurred by the South Park Commissioners in connection with change in lighting system necessitated by driveway changes to remove and relocate cables and conduits:

| | |
|---|---:|
| Labor, Mechanical and Electrical Division | $150.37 |
| Labor, Maintenance and Repair | 10.14 |
| Materials from South Park Stores | 11.06 |
| | $171.59 |
| 15% Overhead and Supervision | 25.74 |
| Electrical Maintenance Expense | 10.84 |
| Paving Equipment Expense | 1.03 |
| Auto Trucking Expense | 13.99 |
| Total | $223.19 |

Claimant alleges that there is due the Chicago Park District from the State of Illinois, the sum of $223.19 for the work done by said South Park Commissioners under said permit. The payment has never been made. Claim was presented to the State of Illinois, Division of Architecture and Engineering, and the Adjutant General on the 12th day of September, 1934.

All of these facts appear by stipulation.

The Attorney General opposes the payment of this bill because there was laches in presenting the bill for payment.

It appears from the stipulation that the claimant herein is a public body. While it is the rule that an award will not be made where the claimant is guilty of laches and an appropriation is allowed to lapse, we are of the opinion that where a public body has made certain beneficial grants to the State of Illinois, which have been received, and the public body in carrying out the grant was put to certain expenses which had been agreed to by the proper officials of the State, and because public bodies are subject to change and the contracting members of such public bodies become different individuals, the rule of laches should not apply. It is admitted that the expenditures were made, that the State received the benefits and that the charges were fair and reasonable.

We, therefore, make an award in favor of the Chicago Park District, in the sum of $223.19.

## OPINION ON REHEARING.

A Petition for Rehearing has been filed by respondent in the above entitled cause, and it is urged as grounds for a

rehearing that the claimant was guilty of laches, and that the appropriation from which the money was payable, was exhausted. This was given consideration in the original opinion and because the Chicago Park District, etc. is a municipal body, we held that the defense of laches did not apply. The reason for this is that the heads of municipal bodies, whose duties might require them to act promptly in certain instances, are frequently changed, through no fault of the municipal body. It would, therefore, be an injustice to such municipal body, to hold it strictly to the doctrine of laches.

It is a familiar doctrine that, apart from any question of statutory limitation, courts of equity will discourage laches and delay in the enforcementof rights. The general principle is that nothing can call forth the court of chancery into activity but conscience, good faith, and reasonable diligence. Where these are wanting, the court is passive and does nothing. The doctrine is founded principally on the equity maxims, "he who seeks equity must do equity," "he who comes into equity must come with clean hands," and "the laws serve the vigilant, and not those who sleep over their rights," and is based on consideration of public policy. Its object is in general to exact of the claimant fair dealing with his adversary, and the rule was adopted largely because after great lapse of time, from death of parties, loss of papers, death of witnesses, change of title, intervention of equities, or other causes there is danger of doing injustice, and there can be no longer a safe determination of the controversy.

The same rule it would seem, would apply to the other defenses.

The Chicago Park District, being a municipal body, we hold does not come within the rule. The motion for a rehearing is, therefore, denied.